# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MELVIN BURL,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:02-CV-2695-RDP |
| } | |
| **ANTHONY J. PRINCIPI, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

### I.   INTRODUCTION AND PROCEDURAL HISTORY

Pending before the court are Defendants Veterans Administration of the United States of America ("VA") and Karen Shamlin's Motion for Summary Judgment (Doc. #52) filed on August 30, 2005, and Plaintiff Melvin Burl's Motion for Summary Judgment (Doc. #55) deemed filed on August 22, 2005,[1] and entered on September 13, 2005.  Defendants filed their brief and evidence in support of summary judgment (Docs. #53, #54) on August 30, 2005, and Plaintiff filed his supporting materials (Docs. #56, #57) on August 22, 2005.  Defendants filed their response (Doc. #58) to Plaintiff's Motion for Summary Judgment on September 13, 2005, and on September 20,

---

[1]While the undersigned's chambers timely received a copy of Plaintiff's Motion for Summary Judgment, the clerk's office did not.  Counsel for Defendants brought this omission to the court's attention on September 12, 2005, and the court immediately sent the copy that it had down to the clerk's office for docketing.  This accounts for the difference between the entered date of September 13, 2005, and the deemed filed date of August 22, 2005.  Moreover, as a result of the late receipt of Plaintiff's Motion for Summary Judgment by the clerk's office, Defendants could not electronically file their response to Plaintiff's Motion for Summary Judgment under the CM/ECF system until September 13, 2005.  (Doc. #61).  Under the circumstances, the court determines that all filings are either timely made or were properly filed out of time and reaches the merits of arguments raised on summary judgment.

2005, Plaintiff filed his response (Doc. #59) to Defendants' Motion for Summary Judgment as well as his reply (Doc. #60) in support of his Motion for Summary Judgment.

On September 20, 2005, Defendants filed a response (Doc. #61) to Plaintiff's reply submission, followed by a reply in support of their Motion for Summary Judgment (Doc. #62) on October 3, 2005. Finally, Plaintiff filed a statement in response (Doc. #63), on October 6, 2005.

Plaintiff initiated this lawsuit on November 1, 2002. (Doc. #1). As a result of prior rulings by the court,[2] Plaintiff's claims against Defendant VA for discriminatory discharge under Title VII and against Defendant Shamlin for invasion of privacy are the only ones that remain pending. (Doc. #32). As discussed more fully below, the court finds that there are no material factual disputes, and that Defendants are entitled to judgment as a matter of law. Accordingly, the court will enter an order granting Defendants' Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing Plaintiff's case with prejudice.

## II.    STATEMENT OF FACTS[3]

Plaintiff was employed by the VA as a Criminal Investigator for the Police and Security Services of the VA Medical Center in Birmingham, Alabama. AF No. 1.[4] In that position, Plaintiff

---

[2]By Order entered on December 23, 2003, the court provided Plaintiff with its standard explanation of Rule 56 requirements that it routinely sends out for the benefit of pro se litigants. (Doc. #27). Further, on December 10, 2004, the court issued its Scheduling Order in this case, which included Exhibit A as an attachment. (Doc. #37). Exhibit A establishes the briefing requisites and submission deadlines that apply to motions for summary judgment.

[3]These are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[4]The designation "AF" stands for admitted fact and indicates a fact upon which the parties agree by virtue of their written submissions on summary judgment, deposition testimony, or any

was a "career conditional employee," who fell under the disciplinary guideline of Title 5 of the United States Code. *Id*. He was classified as a GS-9, step 3 employee. *Id*. While employed at the VA, Plaintiff used a computer which he acknowledged was the property of the VA. AF No. 2.

The VA Directive 6001 on "Limited Personal Use of Government Office Equipment Including Information Technology" ("VA Directive 6001") at 5 § 2.j. states:

> VA employees do not have a right, nor should they have an expectation of privacy while using any Government office equipment at any time, including accessing the World Wide Web or using e-mail. By using Government office equipment, VA employees imply their consent to disclosing the contents of any files or information maintained or passed through government office equipment, and to management, monitoring, and recording with or without cause by authorized officials, *e.g.* VA managers, supervisors, or system administrators.

(Doc. #54 at Ex. 4). In addition, VA Directive 6001 at 3-4 § 2.c.(4)-(5) provides:

> Employees are expected to conduct themselves professionally in the workplace and are required under the Standards of Conduct to refrain from using Government office equipment for activities that are inappropriate. Misuse or inappropriate personal use of Government office equipment includes: . . . . (4) Use for activities that are illegal, inappropriate, or offensive to fellow employees . . . . (5) The creation, downloading, viewing, storage, copying, or transmission of sexually explicit or sexually oriented materials.

(Doc. #54 at Ex. 4). VA Directive 6001 further explains at 6 § 2.k. that "[e]lectronic communications may be disclosed within the Department to employees who have a need to know . . . . [and that] VA management officials may access any electronic communications."

---

other evidence offered in support of their position. As there are cross motions pending, whenever a non-moving party has adequately disputed a fact offered by the other, the court has accepted the non-moving party's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Defendants' Statement of Facts as set forth in Doc. #53 and responded to by Plaintiff in Doc. #59. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

In responding to Defendants' request for admissions, Plaintiff acknowledged that the VA has full rights to control and review anything associated with any VA computer.[5] (Doc. #54 at Ex. 3 at 1 ¶ 5). Further, contained in the record on summary judgment is a copy of a Computer Access Notice that Plaintiff electronically signed on April 4, 2001, which expressly permits the VA to access and audit his VA computer activities. (Doc. #54 at Ex. 5 at 2 ¶ 10).

As set forth in the Proposed Removal letter to Plaintiff dated September 6, 2001, Medical Center Memo 00-04 advises Criminal Investigators that e-mail (1) "is to be used for official government business only[;]" (2) "[n]on-official use is prohibited[;]" (3) "[m]ail messages are government property[;]" and (4) medical center officials may have access to those messages whenever there is a legitimate official purpose for such access." (Doc. #54 at Ex. 2 at 2).

On September 4, 2001 through October 21, 2001, Defendant Shamlin was the Chief Operating Officer of the VA Medical Center in Birmingham. AF No. 9. Shamlin, in her official capacity as the Chief Operating Officer, had the right to access the computer Plaintiff used while employed at the VA. AF No. 10. Further, as the Chief Operating Officer, Shamlin was required to "monitor station-specific security policy," including all computers. AF No. 11.

Shamlin determined that the VA computer used by Plaintiff should be audited after being notified of his inappropriate use of government office equipment. (Doc. #54 at Ex. 7 at 19-21). Shamlin and a network administrator audited the VA computer used by Plaintiff and discovered several instances of visits to improper websites as well as a plethora of inappropriate e-mail content.

---

[5]The court notes that in his response to Defendants' Motion for Summary Judgment, Plaintiff indicates that he disputes this assertion (as well as several other assertions) of fact. (Doc. #59). However, even if he had not admitted the fact at issue, Plaintiff has not satisfied his burden of pointing to specific record evidence that contradicts the factual assertion. Merely disputing a fact without any evidentiary back up is insufficient in opposing a motion for summary judgment.

(*Id.* at 21-23). As set forth in the Proposed Removal and Removal Decision letters to Plaintiff, Shamlin discovered that numerous pornographic web sites had been accessed on Plaintiff's computer, Plaintiff had inappropriately e-mailed another VA employee, Plaintiff's MSN Hotmail account contained over 200 pornographic e-mails, and Plaintiff's electronic mail account on the VA system also contained pornographic content. (Doc. #54 at Exs. 2, 8). The person with whom Plaintiff electronically communicated on non-business related matters was another VA employee named Gail Harris. (Doc. #54 at Ex. 8 at 1).

Without reference to any particular evidence, Plaintiff generally disputes most of the above statements offered by Defendants. However, Plaintiff does confirm, at least in part, that he "sent and received sexually explicit e-mail from a government computer and within a government electronic mail account." AF No. 16; (Doc. #54 at Ex. 3 ¶ 6). Similarly, Plaintiff, in response to the Proposed Removal letter, did not deny utilizing the government computer improperly and inappropriately to communicate with Ms. Harris. AF No. 17.

During the course of Shamlin's audit of the VA computer, a MSN Hotmail icon appeared indicating that new MSN Hotmail messages were available, which Shamlin accessed. (Doc. #54 at Ex. 7 at 23-24). Plaintiff had "pre-set" his personal MSN Hotmail ID name and password on the VA office computer, which allowed direct access to his MSN Hotmail account on the VA's computer. AF No. 19. Plaintiff does not deny accessing his personal MSN Hotmail account through the internet during duty hours. AF No. 20.

Plaintiff was notified of his dismissal and right to appeal this action to the Merit Systems Protect Board ("MSPB"), an administrative appeals process under the Civil Service Reform Act of 1978 ("CSRA"), through the Decision Removal letter signed by Shamlin on October 5, 2001. AF

No. 22. On October 21, 2001, Plaintiff was discharged for improper use of electronic mail systems; failure to follow agency directives; intentional destruction of government property and evidence; and, making threats against his supervisor and employees of the Birmingham VA Medical Center. AF No. 23. The nature of Plaintiff's remaining claims are that the VA discriminatorily discharged him on the basis of race in violation of Title VII and that Shamlin invaded his privacy by auditing his computer and accessing his MSN Hotmail e-mail account. AF Nos. 25-26.

### III.     STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56©. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no

direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV.    ANALYSIS

### A.    Plaintiff's Discriminatory Discharge Claim Against Defendant VA

In a circumstantial evidence case alleging discrimination,[6] the four *prima facie* elements that Plaintiff must establish are: (1) he belongs to a protected category; (2) he suffered an adverse employment action; (3) he was treated less favorably than other similarly situated employees outside of his protected class; and (4) he was qualified for the position. *See, e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (outlining *prima facie* elements for race discrimination claim). Therefore, the initial inquiry for the court is whether Plaintiff has adduced sufficient evidence of a *prima facie* case of discrimination.

---

[6]Plaintiff offers no evidence that would support a "direct evidence" claim.

      **1.**      **Plaintiff cannot establish a *prima facie* case in that he has not identified any suitable comparators.**

For the purposes of summary judgment, Plaintiff has shown that he is a member of a protected racial class, that he suffered an adverse employment action, and that he was qualified for the position that he held—Criminal Investigator for the Police and Security Services of the VA. However, Plaintiff's proof is lacking as to *prima facie* element number 3—evidence of similarly situated employees outside of his protected category, who were treated more favorably than he. Although Plaintiff asserts that such similarly situated employees were treated more favorably, this allegation is not supported by substantial evidence.

The standard to be applied in evaluating whether employees are similarly situated is now a familiar one:

> To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects. . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."

*Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (quoting *Holifield,* 115 F.3d at 1562). Additionally, the Eleventh Circuit has held that "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted); *see also Manicci v. Brown*, 171 F.3d 1364, 1668-69 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's conduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."). Where, as here, there is an absence of any other evidence suggesting that a decision was discriminatory, the

existence of a similarly situated employee is critical to a plaintiff's ability to prevail on summary judgment. *See Holifield*, 115 F.3d at 1562 (*"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."*) (emphasis in original) (citation omitted).

These principles have particular application in cases involving an employee who was discharged for the alleged violation of a work rule. A plaintiff fired for violating an employer's rules must show that the employer retained an employee outside the protected class whom the employer believed engaged in nearly identical rule violations. *Nix v. WLCY Radio*, 738 F.2d 1181, 1185-87 (11th Cir. 1984); *see also Jones v. Gerwens*, 874 F.2d 1534, 1540-42 (11th Cir. 1989), *modified by Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998) (holding that, in cases involving alleged racial bias in the application of discipline for violation of work rules, plaintiff must show that the disciplinary measures enforced against him were more severe than those enforced against the other persons outside his protected class who were believed to have engaged in similar misconduct), *modified in non-relevant part on denial of reh'g by Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323-24 (11th Cir. 1998).

Plaintiff asserts that two non-African American employees were accused of using VA computers in an inappropriate manner, and yet they were not fired. (Doc. #54 at Ex. 9 at 89-94). More particularly, Plaintiff points to a VA employee of Spanish descent, Mr. Montoya, who was allegedly involved in sending inappropriate e-mails, but thereafter continued to be employed at the VA. (*Id.* at 89-90). Plaintiff also testified about a Caucasian employee, Mr. Bartrick Pease, who was found visiting pornographic sites twice, but was not discharged. (*Id.* at 90:3-18). Neither of these proffers aid Plaintiff in avoiding summary judgment. Simply stated, Plaintiff has not offered any

9

evidence that Defendant Shamlin treated other non-African American Criminal Investigators, who engaged in large volumes of non-business electronic e-mail communications of a sexual nature with a fellow VA employee and who visited pornographic web sites, more favorably than it treated him. This is the case for the following reasons.

First, when confronted with the evidence of misuse of a government computer, Plaintiff told management that he had information that many other employees did the same thing. (Doc. #54 at Ex. 2 at 3). But, when asked to disclose this evidence, Plaintiff refused to do so despite his position as a Criminal Investigator.[7]

Second, the audit of the VA computer used by Plaintiff uncovered a plethora of pornographic material and misconduct. It was clear that Plaintiff accessed numerous pornographic web sites, e-mailed another VA employee messages with inappropriate and sexually explicit content, and set up access to his MSN Hotmail account on the VA computer (and that account contained over 200 pornographic e-mails, and also included messages with pornographic content stored in his electronic mail account). (*Id.* at 2; Doc. #54 at Ex. 8 at 2 ¶ 3).

Finally, Plaintiff's dismissal was based not only upon the quality and quantity of sexually-charged material found on his government computer, but also the sensitivity of his job as a Criminal Investigator, a position which required him to report the very type of wrongdoing in which he was (and potentially others were) engaging. Unlike Plaintiff, neither of the persons he attempts to characterize as comparators held the position of Criminal Investigator. Also unlike Plaintiff, neither of these so-called comparators engaged in misconduct comparable in scope or volume to that in

---

[7] Plaintiff's duties in his investigator position pursuant to Medical Center Memo 00-04 expressly included enforcement of the VA's e-mail policy. (*Id.*).

which Plaintiff participated. Therefore, Plaintiff has failed to show that the VA treated a similarly situated person outside of his protected category more favorably than he, and accordingly, Plaintiff cannot establish a *prima facie* case of racial discriminatory discharge.

### 2. Plaintiff cannot demonstrate pretext in the VA's legitimate nondiscriminatory reasons for firing him.

The grounds for the termination of Plaintiff's employment, as set forth in the Removal Decision letter, include: (I) the improper use of electronic mail systems; (ii) the failure to follow agency directives; (iii) the intentional destruction of government property and evidence; and (iv) the use of threats against his supervisor and other employees of the VA. (Doc. #54 at Ex. 8 at 1). If an employer "articulates one or more [legitimate, non-discriminatory] reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024-25 (citing *Combs*, 106 F.3d at 1529).

A plaintiff may not recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Hammock v. Nexcel*

*Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)). "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]." *Alexander*, 207 F.3d at 1341 (11th Cir. 2000); *see also Combs*, 106 F.3d at 1541-43. Moreover, where an employer offers multiple legitimate, nondiscriminatory reasons for its challenged action, the employee must proffer evidence that shows pretext as to each of the proffered reasons. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997). Here, as explained more fully below, although Defendants have articulated four non-discriminatory reasons for his dismissal, Plaintiff has failed to present sufficient evidence of pretext as to any of those reasons.

The determinative issue for the court on Plaintiff's pretext assertions is whether he has adduced sufficient evidence from which a reasonable jury could conclude that the VA's articulated rationale for firing him is a pretext–i.e., a lie–to cover up intentional unlawful discrimination. Plaintiff has not presented substantial evidence of pretext.[8]

In addressing the issue of pretext, the Supreme Court has stated:

> Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for

---

[8]Plaintiff has met his burden of establishing pretext. For example, Plaintiff has not offered any evidence of inappropriate remarks or comments made by Defendant Shamlin that might imply that she harbors a racially discriminatory animus toward African Americans.

the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original) (citations omitted).  Therefore, despite a plaintiff's efforts to demonstrate an issue of fact regarding the truthfulness of an employer's asserted justification for an adverse employment decision, judgment as a matter of law in favor of the employer would still be appropriate if the record conclusively demonstrates some other, non-discriminatory basis for the decision, or reveals only a weak issue of fact coupled with plentiful evidence that no illegal discrimination took place.

Here, Plaintiff has suggested various counter-explanations for his dismissal:  1) an alleged investigation into forged drug prescriptions which the VA director purportedly did not want to proceed; 2) an alleged investigation into an employee calling an escort service during work hours; and 3) an alleged investigation into the improper use of a government vehicle by Shamlin's husband. Plaintiff's assertions are fatally flawed for two reasons.  First, Plaintiff has not offered sufficient evidence to substantiate any of the assertions.  Second, not one of these theories of pretext suggest he was dismissed <u>because of his race</u>.  (*See generally* Doc. #1).[9]

In sum, for the reasons stated above, summary judgment on Plaintiff's race discrimination claim is appropriate for the alternative reason that he has produced insufficient evidence from which a reasonable jury could find pretext.  *See Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir.1989)

---

[9]Furthermore, to the extent Plaintiff implicitly argues that pretext is demonstrated because he was similarly situated to, but treated differently than, Mr. Montoya and Mr. Bartrick Pease, the court has already addressed these same arguments in the context of finding that Plaintiff has not established a *prima facie* case.  Therefore, for the same reasons, the court finds Plaintiff is not similarly situated to these employees, who he claims to be his comparators.  Accordingly, he cannot use evidence about their alleged misconduct to establish pretext.

("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its action.") (citation omitted).

### B.     Plaintiff's Invasion of Privacy Claim Against Defendant Shamlin[10]

Plaintiff has alleged that in viewing his MSN Hotmail account, his supervisor, Defendant Shamlin, invaded his privacy.  The invasion of privacy is a claim founded upon Alabama common law and directly relates to Shamlin's auditing of the VA computer used by Plaintiff.  There is no dispute that part of Defendant Shamlin's job duties and responsibilities encompassed computer audits.  Further, the record is devoid of any evidence tending to show that Defendant's Shamlin's actions with respect to auditing the VA computer were conducted outside the scope of her employment.[11]

However, regardless of whether Shamlin's actions are characterized as arising under the scope of her VA employment,[12] her conduct cannot subject her to state law tort liability for invasion of privacy because of the statutory preemption under the CSRA.  As explained more fully below,

---

[10]Pursuant to a courtroom hearing held on September 30, 2004, the court, with the consent of Defendants, reinstated Plaintiff's invasion of privacy count against Defendant Shamlin in her individual capacity.  (Doc. #33).

[11]Plaintiff had an opportunity to conduct discovery concerning whether Shamlin was acting within the scope of her employment concerning the challenged conduct.  *SJ&W Rance Inc. v. Lehtinen*, 913 F.2d 1538, *amended by*, 913 F.2d 1538 (11th Cir. 1990); *see also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417 (1995) (discussing reviewability of certification).  Plaintiff has not pointed the court to any evidence that he discovered that brings into question the legitimacy of the certification.

[12]Accordingly, the court does not address any defenses that might be available to Defendant Shamlin, in her individual capacity, that relate to her assertion that she was operating within her scope of employment.

because Plaintiff's dispute involves a work related controversy between a federal civil service employee, *i.e.* Plaintiff, and his supervisor, Shamlin, his state law claim is within the scope of coverage of, could have been brought under, and is therefore preempted by the CSRA. *See Broughton v. Courtney*, 861 F.2d 639, 643 (11th Cir. 1988) (generally setting forth test of preemption of state law claims under CSRA).

The CSRA established an integrated and comprehensive scheme of administrative and judicial review for federal employment disputes. The CSRA provides for certain levels of administrative and judicial review depending upon the nature of the personnel action involved. An employee who suffers certain adverse personnel actions has substantial rights to administrative and, in certain cases, judicial review pursuant to the CSRA. 5 U.S.C. §§ 7503, 7512, 7513, 7703(b)(1).

In *Broughton*, a federal employee brought suit against his supervisors claiming malicious interference and conspiracy to interfere with his employment relating to his demotion. *Broughton*, 861 F. 2d at 640-41. The Eleventh Circuit held that the CSRA preempted these state law tort claims. *Id.* at 644 ("[W]here, as here, an employee challenges personnel actions within the scope of the Act's coverage under state law, those challenges are preempted by the CSRA.").

Congress, through the passage of the CSRA requires federal employees to seek relief for tort claims through the administrative process created under the CSRA. One of the "prohibited personnel practices" proscribed by the CSRA is a "personnel action" that violates "any law, rule, or regulation implementing or directly concerning the merit system principles." 5 U.S.C. § 2302(b)(12). One such merit system principle provides that "All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management . . . privacy or constitutional rights." 5 U.S.C. § 2301(b)(2). Thus, following the rational of *Broughton*, and the

15

congressional policy underlying the CSRA to unify "challenges to federal personnel decisions in a single administrative forum[,]" Plaintiff's exclusive remedy for his invasion of privacy tort claim is through the comprehensive administrative system provided for under the CSRA. *Broughton*, 861 F.2d at 641. As such, under the facts of this case, Plaintiff's invasion of privacy claim against Defendant Shamlin in her individual capacity is preempted by the CSRA and is due to be dismissed as a matter of law.

V.     **CONCLUSION**

Defendants have carried their burden on summary judgment in demonstrating that no material facts are in dispute and that they are entitled to judgment as a matter of law. Plaintiff, on the other hand, has not met his burden. Accordingly, the court will enter an order granting Defendants' Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing Plaintiff's case with prejudice.

**DONE** and **ORDERED** this ____31st____ day of October, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE